**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

WONDER WILLIAMS,

         Plaintiff,

   - v -               Civ. No. 9:13-CV-965
                       (BKS/DJS)

A. LANE, *Correctional Officer*, *et al.*,

         Defendants.

**APPEARANCES:**             **OF COUNSEL:**

WONDER WILLIAMS
Plaintiff, *Pro Se*
10-A-0102
Five Points Correctional Facility, Caller Box 119
Romulus, New York 14541

HON. ERIC T. SCHNEIDERMAN       KEITH J. STARLIN, ESQ.
Attorney General of the State of New York   Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

   *Pro se* Plaintiff Wonder Williams commenced this action, pursuant to 42 U.S.C. § 1983, asserting a First Amendment interference with mail claim. Dkt. No. 12, Second Am. Compl. Plaintiff alleges that while he was incarcerated at Auburn Correctional Facility ("Auburn C.F.") Defendant Correctional Officer Alfred Lane withheld his incoming non-legal mail. Plaintiff also names Captains Brian Chuttey and Timothy McCarthy as Defendants for failing to properly supervise Defendant Lane and appropriately respond to Plaintiff's complaints. Presently before the

Court is Defendants' Motion for Summary Judgment. Dkt. No. 57, Defs.' Mot. for Summ. J. Plaintiff has filed a Response in opposition and Defendants filed a Reply. Dkt. No. 80, Pl.'s Resp.; Dkt. No. 82, Defs.' Reply. For the reasons that follow, the Court recommends that Defendants' Motion be **GRANTED**.

## I. BACKGROUND

The Court recites the following material facts, noting where they are disputed. Mail sent to inmates in the Auburn Special Housing Unit ("SHU") was first processed by an inmate correspondence department. Dkt. No. 57-1, Defs.' Statement of Material Facts ("SMF") at ¶ 24; Dkt. No. 80-4, Pl.'s Counter-SMF at ¶ 24. Staff in the correspondence department would examine inmate mail for contraband; when mail was approved, it would be delivered to the inmates by the correctional officer on duty. Defs.' SMF at ¶¶ 25-26; Pl.'s Counter-SMF at ¶¶ 25-26. Inmates would receive a receipt when contraband was seized. Dkt. No. 57-4, Decl. of Keith Starlin, dated Oct. 9, 2015, Ex. B, Pl.'s Dep., dated June 12, 2015 ("Pl.'s Dep.") at p. 220.

Plaintiff alleges that on or about May 13, 2010, an unknown correctional officer who was distributing mail told Plaintiff that Lane had Plaintiff's mail. Second Am. Compl. at ¶ 3; *see also* Pl.'s Dep. at pp. 35-36. Plaintiff alleges that on September 7, 2010, he asked the correctional officer on duty for his mail and was again informed that Lane had his mail. Dkt. No. 80, Pl.'s Decl., dated Jan. 25, 2016, at ¶ 15. Lane denies that he either took or withheld Plaintiff's mail or was even on duty on either of May 13 or September 7, 2010. Dkt. No. 57-10, Decl. of Alfred Lane, dated Oct. 16, 2015, at ¶¶ 6 & 8. Plaintiff does not know what mail was confiscated on those dates, Pl.'s Dep. at p. 86, but assumes that it was non-legal mail because legal mail had to be signed for, *id.* at p. 87. The unknown correctional officers did not know why Plaintiff's mail was being withheld. *Id.* at p.

36.

On October 6, 2010, Plaintiff was again informed that Lane was withholding his mail, so Plaintiff asked to speak to Lane. *Id.* at pp. 37-38. Lane then came to Plaintiff's cell holding a manila envelope, photographs, and regular envelopes. Defs.' SMF at ¶ 36; Pl.'s Counter-SMF at ¶ 36. Lane states that he told Plaintiff that he was confiscating a visible photograph because it depicted nudity, which was not allowed under Department of Corrections and Community Supervision ("DOCCS") policy. Lane Decl. at ¶¶ 14-15. Plaintiff denies that Lane told him that the photograph depicted nudity. Pl.'s Decl. at ¶ 23. Plaintiff also states that the photograph would not have been visible to Lane unless he reopened the envelope because after the correspondence department opened and screened inmate mail, they would staple them in "opaque" envelopes. Pl.'s Counter-SMF at ¶ 27. According to Plaintiff, when he accused Lane of confiscating his mail, Lane said he "doesn't give a fuck about that" and admitted that he had been confiscating Plaintiff's mail for months. Pl.'s Decl. at ¶ 26. Lane denies having made those statements. Lane Decl. at ¶ 12.

In addition to the manila envelope, Plaintiff claims that Lane was holding several photographs and several regular-sized envelopes. Pl.'s Dep. at pp. 57-58 & 81. Plaintiff was only able to see that the manila envelope was addressed to him and was unable to tell who the photographs were of, *id.* at pp. 54-55, but claims that Lane told him that it was his mail, *id.* at p. 56. Plaintiff never received any of the mail, *id.* at p. 84, and does not know who it was from, *id.* at p. 87. Plaintiff, however, believes that the letters and photographs Lane was holding may have been from family and friends who later sent letters asking about photographs that Plaintiff had never received. *Id.* at pp. 66-67. Plaintiff filed a grievance, No. AUB-571671-10, regarding Lane's interference with Plaintiff's mail on October 6, 2010. Defs.' SMF at ¶¶ 16-17; Pl.'s Counter-SMF at ¶¶ 16-17. Two

days later, Plaintiff filed an addendum to the Grievance, which asserted that Lane had confiscated Plaintiff's mail "for months." Defs.' SMF at ¶ 21; Pl.'s Counter-SMF at ¶ 21.

Based on the above incidents, Plaintiff alleges that from May through October 2010, whenever Lane was on duty, he would not receive his mail. *Id.* at pp. 42 & 46. However, Plaintiff also acknowledged receiving mail during this period. *Id.* at pp. 71-73 & 179. Plaintiff suspects, although he does not know, that he lost contact with certain people due to Lane confiscating his mail. *Id.* at pp. 196, 198, 200, & 206. Plaintiff also alleges that he did not receive his magazine subscriptions consistently, although he did receive some issues. *Id.* at pp. 129-30. Lane claims that the only occasion when he withheld Plaintiff's mail was the incident on October 6, 2010, when he confiscated the photograph which allegedly depicted nudity. Lane Decl. at ¶ 18.

The Inmate Grievance Resolution Committee ("IGRC") granted Plaintiff's Grievance in part. Starlin Decl., Ex. A, at p. 5. The IGRC found that before Lane confiscated Plaintiff's photograph due to it depicting nudity, he should have forwarded it to the appropriate department for determination, since the photograph had been allowed by the correspondence department. *Id.* Plaintiff appealed his Grievance to the Auburn C.F. Superintendent and then to the Central Office Review Committee ("CORC"), which both found insufficient evidence to substantiate staff malfeasance. *Id.* at pp. 8 & 12. Prior to filing his Grievance, Plaintiff had submitted complaint letters to Defendants Chuttey and McCarthy. Defs.' SMF at ¶ 48; Pl.'s Counter-SMF at ¶ 48; *see also* Dkt. No. 80-2, Pl.'s Exs. C, D, E, F, & G. Plaintiff claims that he delivered these complaints by handing them to the on-duty correctional officer who would put them in a mailbag that would go to the facility mailroom. Defs.' SMF at ¶ 49; Pl.'s Counter-SMF at ¶ 49. Plaintiff alleges that he also talked to Chuttey and McCarthy about not receiving his mail as they were making their rounds.

Pl.'s Dep. at pp. 106-08. Chuttey and McCarthy deny ever receiving complaints from Plaintiff regarding interference with his mail. Dkt. No. 57-11, Decl. of Brian Chuttey, dated Oct. 14, 2015, at ¶ 7; Dkt. No. 57-12, Decl. of Timothy McCarthy, dated Oct. 19, 2015, at ¶ 5.

Around October or November 2010, Lane stopped working in the Auburn SHU where Plaintiff was housed. Defs.' SMF at ¶ 58; Pl.'s Counter-SMF at ¶ 58. Plaintiff claims that after Lane was reassigned, his mail went back to normal. Pl.'s Dep. at pp. 191-92.

## II. LEGAL STANDARD

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion

for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

Defendants seek summary judgment on the following grounds: (1) Plaintiff has failed to produce evidence precluding summary judgment on his First Amendment interference with mail claim against Lane; (2) the claims against Chuttey and McCarthy should be dismissed for failure to establish an underlying constitutional violation and/or personal involvement; and (3) Defendants are entitled to qualified immunity. Dkt. No. 57-13, Defs.' Mem. of Law.

#### A. First Amendment Claim Against Defendant Lane

"Inmates unquestionably have a First Amendment right of free speech to send and receive mail." *Cancel v. Goord*, 2001 WL 303713, at *5 (S.D.N.Y. Mar. 29, 2001) (citing *Wolfish v. Levi*, 573 F.2d 118, 130 (2d Cir. 1978)). "Restrictions on prisoners' mail are justified only if they 'further[] one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.'" *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)). In balancing these competing interests, courts generally afford greater protection to legal mail versus non-legal mail; similarly, outgoing mail has more protection than incoming. *See Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989); *Davis v. Goord*, 320 F.3d at 351.

Here, Plaintiff alleges that Defendant Lane withheld his incoming non-legal mail. In order to state a claim for interference with incoming non-legal mail, an inmate must show "a pattern and practice of interference that is not justified by any legitimate penological concern." *Cancel v. Goord*, 2001 WL 303713, at *6. In *Alhers v. Rabinowitz*, 684 F.3d 53 (2d Cir. 2012), the Second Circuit held that the allegation of eleven instances of interference with incoming non-legal mail was

insufficient in itself to "support an inference of *regular* interference." 684 F.3d at 65;[1] *see also Cancel v. Goord*, 2014 WL 2095024, at *6 (finding allegation of single incident of interference with non-legal mail insufficient to support First Amendment claim).

Plaintiff asserts that "for months" there was a pattern that whenever Lane was on duty, he would not receive his mail. Pl.'s Decl. at ¶ 8. However, Plaintiff is at most only able to identify three specific incidents, on May 13, September 7, and October 6, 2010, on which Lane allegedly withheld his mail. Plaintiff's assertion that Lane withheld his mail on other unspecified occasions is wholly speculative. Plaintiff bases his allegation that Lane engaged in a pattern of withholding his mail on the following: (1) that friends and family mentioned photographs which they had sent Plaintiff but that he had never received, Pl.'s Dep. at pp. 69-74; (2) that Plaintiff lost contact with certain friends because he was not receiving their letters, *id.* at pp. 196, 198, 200, & 206; and (3) that Plaintiff did not consistently receive his magazine subscriptions, *id.* at pp. 129-30. None of these unsupported allegations are sufficient to create an issue of triable fact that Lane engaged in a pattern of withholding Plaintiff's mail whenever he was on duty. *See Singleton v. Williams*, 2014 WL 2095024, at *3-4 (S.D.N.Y. May 20, 2014) (finding allegation that the plaintiff sent letters to numerous individuals but did not receive responses insufficient to establish a pattern or practice of interference). Other than the three incidents when correctional officers purportedly informed Plaintiff that his mail was being withheld, Plaintiff is unable to specifically identify any mail that he did not receive. Furthermore, Plaintiff acknowledges receiving mail during this period. Pl.'s

---

[1] In order to show interference with *legal* mail, the Second Circuit has stated that an inmate "must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" *Davis v. Goord*, 320 F.3d at 351 (quoting *Cancel v. Goord*, 2001 WL 303713, at *6). In *Ahlers*, the Circuit Court noted that the standard for non-legal mail would be lower, but did not need to "articulate the correct standard" because the plaintiff's complaint did not "support a claim that any alleged 'interference' with his non-legal mail was 'regular[]' or unjustifiabl[e].'" *Ahlers v. Rabinowitz*, 684 F.3d at 64.

Dep. at p. 179. Even assuming that Plaintiff was able to identify specific mail that he did not receive, Plaintiff does not provide any evidence suggesting that the reason he did not receive it was because Lane had confiscated it. Plaintiff's speculation that "whenever defendant Lane was working, [he] would not receive [his] incoming mail" is insufficient to create an issue of fact. Pl.'s Decl. at ¶ 8.

Thus, Plaintiff, at most, identifies three specific incidents on which Lane confiscated Plaintiff's mail. On May 13 and September 7, 2010, Plaintiff was informed that Lane was withholding his mail. On October 6, 2010, Lane confiscated a photograph depicting nudity in Plaintiff's mail. Lane Decl. at ¶ 14. Plaintiff asserts that Lane was holding other letters and photographs belonging to Plaintiff on that occasion. Pl.'s Decl. at ¶¶ 26 & 28. Assuming that Lane did confiscate Plaintiff's mail on each of these occasions, they are insufficient to establish a "pattern or practice" of interference with Plaintiff's mail by Lane. In *Ahlers*, the Second Circuit found that the allegation of eleven instances of mail interference over four months was insufficient to "support an inference of *regular* interference." 684 F.3d at 65; *see also Shannon v. Venettozzi*, 2015 WL 114179, at *11 (S.D.N.Y. Jan. 8, 2015) (finding two instances of interference with non-legal mail insufficient to support claim). Thus, three instances of mail interference are insufficient as a matter of law to establish a pattern or practice.[2]

Moreover, Plaintiff's assertion that Lane withheld his mail on May 13 and September 7 is

---

[2] At his deposition, Plaintiff suggests there were four incidents, rather than the three alleged in the Amended Complaint, when correctional officers informed him that Lane was withholding his mail. Pl.'s Dep. at pp. 40-41. However, even assuming that there were four incidents, that is still insufficient to establish a pattern or practice.

based on inadmissible hearsay statements of unidentified correctional officers.[3] Additionally, the SHU log books evidence that Lane was not even on duty on either of those dates. *See* Dkt. No. 57-8, Starlin Decl., Ex. F, at pp. 73, 77-78, 175-76, & 181;[4] *see also* Lane Decl. at ¶¶ 7 & 9. Thus, Plaintiff has not shown an issue of fact that Lane confiscated his mail on those dates.

Furthermore, as to the October 6 incident, it is undisputed that Lane confiscated a photograph, but Plaintiff's assertion that Lane confiscated other mail is based on mere speculation. Plaintiff admits that he was unable to read his name on the envelopes and does not know who the photographs were of. Pl.'s Dep. at pp. 54-55. Lane asserts that the photograph he confiscated depicted nudity. Lane Decl. at ¶ 14. Plaintiff denies this assertion, Pl.'s Decl. at ¶ 23, but again, this denial is mere speculation based upon his belief that people sending him mail knew not to send him photographs depicting nudity, Pl.'s Dep. at pp. 77 & 79. Nevertheless, restrictions on prisoners' mail may be justified if they further "governmental interests of security, order, and rehabilitation." *Davis v. Goord*, 320 F.3d at 351. As articulated by Lane, DOCCS policy forbids personal nude photographs because of potential for conflicts between inmates and because it could be accessed by inmates who are sex offenders. Lane Decl. at ¶ 15. Thus, Lane's confiscation of Plaintiff's photograph depicting nudity was justified by a legitimate penological interest. *See Giano v. Senkowski*, 54 F.3d 1050, 1054-55 (2d Cir. 1995) (finding that restriction on photographs depicting nudity was rationally related to legitimate penological interests).

---

[3] Plaintiff argues, and has filed a Motion *in Limine* for sanctions based on spoliation of evidence, Dkt. No. 79, that Defendants failed to preserve the video of his conversations with the unidentified correctional officers and that if such video had been preserved, his statements would not be hearsay. Dkt. No. 80-1, Pl.'s Mem. of Law at p. 5. However, the hearsay statements uttered during his conversation with the unidentified correctional officers would still be hearsay even if Plaintiff introduced video of that conversation. The Court will not make a recommendation on Plaintiff's Motion *in Limine*, which is properly a matter for the district court, if this action should proceed to trial.

[4] The citations correspond to the assigned pagination in the upperhand corner of the pages.

Thus, even if three incidents of mail interference were sufficient to establish a pattern or practice, Plaintiff has failed to establish that there is a genuine dispute of material fact as to whether Lane confiscated his mail on either May 13 or September 7, or that Lane's confiscation of Plaintiff's photograph on October 6 was not justified by legitimate penological interests.

Accordingly, the Court recommends that Defendants' Motion for Summary Judgment be **GRANTED** as to Plaintiff's claims against Defendant Lane.

### B. Claims against Defendants Chuttey and McCarthy

Plaintiff claims that Defendants Chuttey and McCarthy failed to properly supervise Defendant Lane and ignored Plaintiff's complaint letters. Because the Court has found that Plaintiff's claims for mail interference against Lane are unfounded, Plaintiff's supervisory claims against Chuttey and McCarthy are also subject to summary judgment. Accordingly, it is recommended that Defendants' Motion be **GRANTED** as to Plaintiff's claims against Chuttey and McCarthy.[5]

### IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 57) be **GRANTED** and this action be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

---

[5] The Court does not address Defendants' argument that Defendants would be entitled to qualified immunity.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: June 14, 2016
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge