**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**WONDER WILLIAMS,**

       **Plaintiff,**

**v.**

             **9:13-CV-0965 (BKS/DJS)**

**CORRECTIONAL OFFICER LANE**, *et al.*,

       **Defendants.**
_____

**Appearances:**

**Wonder Williams**
10-A-0102
Five Points Correctional Facility
Caller Box 119
Romulus, NY 14541
Plaintiff, pro se

**Keith J. Starlin, AAG**
Hon. Eric T. Schneiderman
Office of New York State Attorney General
The Capitol
Albany, NY 12224
Attorney for Defendants

**Hon. Brenda K. Sannes, U. S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

   Plaintiff pro se Wonder Williams brought this action against defendants under 42 U.S.C.

§ 1983 asserting a First Amendment claim arising out of the alleged interference with his mail

while he was incarcerated in the Special Housing Unit (SHU) at the Auburn Correctional

1

Facility. Dkt. No. 12. Plaintiff alleges that defendant Correctional Officer Lane withheld Plaintiff's incoming mail and that Plaintiff complained to defendants Captain Chuttey and Captain McCarthy who did not respond to his complaints. Dkt. No. 12, pp. 1-7.

Defendants filed a motion for summary judgment on October 16, 2015. Dkt. No. 57. Plaintiff filed a response in opposition (Dkt. Nos. 64 and 80) and Defendants filed a reply (Dkt. No. 82). This matter was assigned to United States Magistrate Judge Daniel J. Stewart who, on June 14, 2016, issued a Report-Recommendation and Order recommending that Defendant's motion for summary judgment be granted and that this action be dismissed. Dkt. No. 92, p. 11. Magistrate Judge Stewart advised the parties that under 28 U.S.C. § 636(b)(1), they had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. Dkt. No. 92, pp. 11-12.

Plaintiff filed a timely objection to the Report-Recommendation (Dkt. No. 93) and Defendants have responded to the objection (Dkt. No. 94). Plaintiff has replied to the Defendant's response. Dkt. No. 95. For the reasons set forth below, the Report-Recommendation is adopted in its entirety.

## II. Standard of Review

This Court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.*

### III. Discussion

#### A.  Standard for Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).  Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)).

Where the plaintiff proceeds pro se, the Court must read his submissions liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174

F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

However, a pro se party's "'bald assertion,' completely unsupported by evidence, is not

sufficient to overcome a motion for summary judgment." *Jordan v. New York*, 773 F. Supp. 2d

255, 268 (N.D.N.Y. 2010) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)); *see also*

*Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011).

### B.  The Report-Recommendation

As Magistrate Judge Stewart noted, in order to establish a First Amendment claim for

interference with incoming, non-legal mail an inmate "'must show a pattern and practice of

interference that is not justified by any legitimate penological concern.'" *Singleton v. Williams*,

No. 12 Civ. 2021 (LGS), 2014 WL 2095024, *4, 2014 U.S. Dist. LEXIS 69181, at *9 (S.D.N.Y.

May 20, 2014) (quoting *Cancel v. Goord*, No. 00 Civ. 2042, 2001 WL 303713, at *6, 2001 U.S.

Dist. LEXIS, at *18-19 (S.D.N.Y. Mar. 29, 2001))[1]; *see, e.g.*, *Ahlers v. Rabinowitz*, 684 F.3d 53,

65 (2d Cir. 2012) (affirming dismissal of complaint alleging interference with incoming non-

legal mail because eleven alleged instances of interference over four months could not support a

claim that interference was regular and unjustifiable).  Dkt. No. 92, pp. 7-8.

In the Report-Recommendation Magistrate Judge Stewart considered what evidence

supported Plaintiff's allegation that "for months," whenever Lane was working, Plaintiff would

not receive his incoming mail.  Dkt. No. 92, p. 8; Dkt. No. 30, p. 2.[2]  Magistrate Judge Stewart

found that Plaintiff's claim that Lane withheld his mail on dates other than the three specific

incidents alleged – May 13, September 7, and October 6, 2010 "is wholly speculative."  Dkt. No.

---

[1] The Court has appended copies of all unreported decisions cited in this Decision for the convenience of the pro se plaintiff.
[2] Plaintiff alleges that this occurred over a six-month period, from May 2010 to October 2010.  Dkt. No. 12, p. 6.

92, p. 8. Magistrate Judge Stewart noted that Plaintiff was "unable to specifically identify any mail that he did not receive;" that Plaintiff acknowledged receiving mail during this period; and that Plaintiff did not provide any evidence suggesting that the reason he did not receive mail is because it was confiscated by Lane. Dkt. No. 92, pp. 8-9. Magistrate Judge Stewart found that Plaintiff's speculation that he did not receive mail whenever Lane was working was insufficient to create an issue of fact. Dkt. No. 92, p. 9.

Magistrate Judge Stewart noted that Plaintiff, "at most" only identified three specific incidents on which Lane allegedly interfered with Plaintiff's mail -- May 13, September 7 and October 6, 2010 -- and that three instances are insufficient as a matter of law to establish a pattern or practice. Dkt. No. 92, p. 8-9. In addition, with respect to two of these dates – May 13, 2010 and September 7, 2010 – Magistrate Judge Stewart found that Plaintiff had failed to raise a triable issue of fact that Lane interfered with his mail. Plaintiff's tampering claim was based upon "inadmissible hearsay statements of unidentified correctional officers" who allegedly told Plaintiff that Lane had Plaintiff's mail. Dkt. No. 92, p. 10. Moreover, the SHU log books evidence that "Lane was not even on duty on either of those dates." Dkt. No. 92, pp. 9-10.

With respect to the third date -- October 6, 2010 – Magistrate Judge Stewart noted that it is undisputed that Lane confiscated a photograph from Plaintiff's incoming mail. Dkt. No. 92, p. 10. Plaintiff asserts that Lane withheld other letters and photographs as well. Dkt. No. 92, p. 9. Lane stated that he confiscated a photograph depicting nudity, in accord with DOCCS policy which forbids personal nude photographs in order to prevent conflicts between inmates and access by sex offenders. Dkt. No. 92, p. 10. Magistrate Judge Stewart found that Lane's confiscation of a photograph depicting nudity was justified by a legitimate penological interest.

*Id.*[3]  Although Plaintiff denied that the photograph depicted nudity, Magistrate Judge Stewart found that Plaintiff's "denial is mere speculation based upon his belief that people sending him mail knew not to send him photographs depicting nudity."  Dkt. No. 92, p. 10.  Thus, even if the three alleged incidents of mail interference were sufficient to constitute a pattern or practice, Magistrate Judge Stewart found that Plaintiff failed to establish a genuine issue of fact to show that his mail was confiscated on May 13 or September 7 or that Lane's confiscation of a photograph on October 7 was not justified by legitimate penological interests.  Magistrate Judge Stewart accordingly recommended that the Defendants' motion for summary judgment be granted as to Plaintiff's claims against Lane, and that Plaintiff's supervisory claims against defendants Chuttey and McCarthy be dismissed because Plaintiff's claim against Lane was unfounded.  Dkt. No. 92, p. 11.

### C.  Objection and Analysis

#### a.  Lane's Alleged Admission

Plaintiff has objected to the Report-Recommendation arguing, *inter alia*, that his claim of mail interference on occasions beyond May 13, September 7 and October 6, 2010 is not "wholly speculative" because Plaintiff presented evidence, in his sworn declaration, that Defendant Lane admitted that he had interfered with Plaintiff's mail for months.  Dkt. No. 93, p. 3-4.

In Plaintiff's sworn declaration, filed in opposition to the motion for summary judgment,

---

[3] In his declaration filed in support of the motion for summary judgment Lane explained that mail sent to inmates at the Auburn SHU "first went through and was processed by the inmate correspondence department at Auburn," and that incoming mail was opened by individuals in that department before it arrived at the SHU.  Dkt. No. 57-10, p. 7. Lane stated that he saw a "plainly visible photograph" of a nude woman in an already opened envelope for Williams and that he confiscated the photograph.  Lane noted that inmates work in the mail room and "the presence of contraband in envelopes sent out from the mail room is a real possibility."  *Id.*, p. 8.  Lane stated that this was the only occasion on which he confiscated mail from Williams.  *Id.*

Plaintiff stated that on October 6, 2010, after Plaintiff confronted Lane about confiscating

Plaintiff's mail, in violation of policy and Plaintiff's rights, Lane responded maliciously that he

"doesn't give a fuck about that," and that Lane

> admitted that he had indeed been interfering with and depriving me of my incoming mail numerous times for the course of months. He stated "I've been doing it for months" and "I'll do whatever I fucking want or feel like" . . . He stated that I hadn't received any of my incoming mail when he was working due to his interference and continued to state that I wouldn't receive any mail when he was working on duty.

Dkt. No. 80, pp. 6-7; *see also* Verified Second Amended Complaint Dkt. No. 12, pp. 5 (alleging

that Lane said "I've been doing it for months," and that Plaintiff "won't receive any mail

whenever [Lane] is working."). Plaintiff further stated that the entire verbal exchange on

October 6, 2010 was captured in the SHU video cameras. Dkt. No. 80, p. 7. Plaintiff argues that

his sworn statement regarding Lane's alleged admission is sufficient to raise a triable issue of

fact. Lane, on the other hand, has submitted an affidavit stating that the only mail he ever

confiscated from Plaintiff was the nude photograph. Dkt. No. 57-10, p. 8. Lane denies having

made any such admission; Lane denies telling Plaintiff that Lane was withholding his mail. Dkt.

No. 57-10, pp. 6, 8.

In response to this objection, Defendants note that Plaintiff did not describe any

admission by Lane until the Second Amended Complaint, on January 3, 2014, more than three

years after the incident, and after the Court's December 6, 2013 Decision and Order dismissing

the previous complaint which specifically informed Plaintiff that he needed to allege a pattern

and practice of mail interference to support a mail interference claim. Dkt. No. 94, p. 2.

Defendants allege that the Court is "free to discount" this alleged admission by Lane because it is

"not only wholly unbelievable, it is clearly contradicted by the detailed versions of that October 6, 2010 conversation that plaintiff himself gave, in writing, on three earlier occasions, including in two (2) sworn pleadings filed in this action." Dkt. No. 94, p. 2. The Court notes that Defendant's argument is supported by the record. In Plaintiff's October 6, 2010 grievance, and the October 8, 2010 "add on," he provided a detailed, almost three-page description of the October 6th incident, which did not include any admission by Lane to any prior interference of mail. Dkt. No. 80-2, pp. 20-23. In his original verified complaint Plaintiff's description of the incident does not include any admission by Lane to any prior interference of mail. Dkt. No. 1, pp. 6-7. And Plaintiff did not describe any such admission in the lengthy description of the incident in his verified first amended complaint. Dkt. No. 9, pp. 6-10.

Defendants also argue that even if the Court does not discount Plaintiff's latest version of that conversation, the alleged admission by Lane is insufficient to support a mail interference claim because it is "wholly devoid of the details required to sufficiently support plaintiff's mail interference claim." *Id.* Defendants note that the alleged admission "says nothing about how many times [Lane] supposedly confiscated plaintiff's mail, what mail he supposedly confiscated [or] when he supposedly confiscated it." *Id.*

In response, Plaintiff asserts that his claim regarding Lane's admission has been made "consistently throughout this case," and that Lane's admission would have been captured on the SHU video from that date. Dkt. No. 95, p. 3. The only document, however, which Plaintiff cites in support of his claim that he has consistently alleged Lane's admission does not support his claim. Plaintiff cites to his October 8, 2010 "add-on" to the grievance, which asserts that his incoming mail has been confiscated "for months," but does not describe any admission by Lane.

Dkt. No. 95, p. 3; *see* Dkt. No. 80-2, p. 23.

As a general rule, at the summary judgment stage, courts must not weigh evidence or assess the credibility of witnesses. *Scott v. Coughlin*, 344 F.3d 282, 289-90 (2d Cir. 2003). However, in the "rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account." *Jeffreys*, 426 F.3d at 554 (internal quotations and citations omitted). In *Jeffreys*, the plaintiff's version of events directly contradicted the account he had previously and consistently provided, was unsupported by any other evidence, and was inconsistent with all of the other evidence in the record. *Id.* at 554-55. The Second Circuit found that summary judgment for the defendants was appropriate because "no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in the complaint." 426 F.3d at 555 (internal marks and quotation omitted). In so ruling, the Court noted that "[i]f there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because of an earlier account that was *ambiguous, confusing, or simply incomplete*." 426 F.3d at 555 n.2 (citing *Langman Fabrics v. Graff Californiawear, Inc.,* 160 F.3d 106, 112 (2d Cir.1998)).

In this case, Plaintiff has failed to advance any plausible explanation for why he did not include Lane's alleged admission in his detailed descriptions of this incident, shortly after the incident, in October 2010, and in his first two verified complaints in this case. Nevertheless, there is no *contradiction* between Plaintiff's recent version and his prior versions, and

considering all inferences in favor of the Plaintiff, the Court does not find that no reasonable juror could believe Plaintiff's recent version.

Even crediting Plaintiff's testimony regarding Lane's admission, however, the Court finds that Plaintiff has failed to meet his burden of coming forward with "*specific facts* showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis added); *see Jeffreys*, 426 F.3d at 554 (noting that, to defeat summary judgment "a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful"). Plaintiff has failed to provide admissible evidence of any specific instance of mail interference beyond the incident on October 6, 2010, when Lane acknowledged confiscating a nude photograph from Plaintiff's mail. Beyond his general testimony that he did not always receive the magazines to which he subscribed, Plaintiff has failed to identify any incoming mail that he did not receive. Moreover, Lane's alleged admission does not provide any information regarding how many times Plaintiff's incoming mail was confiscated, when it was confiscated, what mail was confiscated or whether any confiscation was justified by penological interests. Plaintiff's speculation that had incoming mail which he did not receive because of Lane's interference is insufficient to raise a material issue of fact that the interference was regular or that any interference was unjustified. *See*, *e.g.*, *Ahlers*, 684 F.3d at 65 ("[E]leven instances over four months does not in itself support an inference of *regular* interference. And the allegation that mail was withheld is insufficient to support a claim that it was withheld *unjustifiably*.")

The Court finds that there is insufficient evidence in this record from which a reasonable juror could find that Plaintiff has established interference with his incoming non-legal mail rising to the level of a First Amendment violation.

### b. Plaintiff's Motion for Sanctions for Spoliation

Plaintiff also has objected to Magistrate Judge Stewart's failure to make a recommendation on plaintiff's motion for spoliation of evidence sanctions.  Dkt. No. 93, p. 5.  In the Report-Recommendation Magistrate Judge Stewart noted that he would not make a recommendation on the plaintiff's motion, which would "properly be a matter for the district court, if this action should proceed to trial."  Dkt. No. 92, p. 10 n.3.  Plaintiff argues that his motion for spoliation "speaks directly to issues of the defendant's repeated and gross destruction of relevant and crucial evidence favorable to the plaintiff and his claims," and that he was prejudiced by the failure to resolve the issues in his motion for spoliation sanctions before the defendants' motion for summary judgment.  Dkt. No. 93, pp. 2, 5.

"In borderline cases, an inference of spoliation, in combination with some (not insubstantial) evidence for the plaintiff's cause of action, can allow the plaintiff to survive summary judgment." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) (internal quotations omitted).   However, in order to establish spoliation the plaintiff must show: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (quoting *Byrnie*, 243 F.3d at 107-12).  A district court has "broad discretion in crafting a proper sanction for spoliation," *West v. Goodyear Tire and Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999), but "should impose the least harsh sanction that can provide an adequate remedy."  *Hawley v. Mphasis Corp.*, 302 F.R.D. 37,

46 (S.D.N.Y. 2014). An adverse inference is "an extreme sanction and should not be imposed lightly." *Treppel v. Biovail Corp*, 249 F.R.D. 111, 120 (S.D.N.Y. 2008).

As a preliminary matter, the Court notes that Plaintiff has failed to show how most of the items that he alleges were destroyed by the defendants would have provided admissible evidence germane to the issue here, i.e., to show that Lane engaged in a regular pattern and practice of unjustified interference with Plaintiff's mail. *See* Dkt. No. 79, pp. 3-4.[4] Plaintiff does assert that the SHU video recording on October 6, 2010 would have captured Lane's alleged verbal admission that he had been interfering with Plaintiff's mail for months, Dkt. No. 79, p. 3. Although, as set forth above, even by Plaintiff's account, Lane's alleged admission would not provide a material issue of fact showing the regular, unjustifiable interference with his incoming mail, in light of this objection, the Court has considered Plaintiff's motion for spoliation of evidence sanctions and has reviewed Plaintiff's motion (Dkt. No. 79), the Defendants' response (Dkt. No. 90), and the Plaintiff's reply (Dkt. No. 91).

In response to Plaintiff's motion, each of the defendants has filed a declaration stating that he did not receive any request to preserve evidence, and that he did not receive the preservation requests Plaintiff now claims to have submitted to various officials. Dkt. Nos. 90-2, 90-3, 90-4. Defendant Lane stated that he "immediately disposed of" the nude photograph that he confiscated in October 2010 "as it was contraband;" it would not be used to charge the

---

[4] For example, while Plaintiff alleges that the October 6, 2010 SHU log book would show that Lane was on duty in the SHU on that date, this fact is undisputed. Dkt. No. 79, p. 6. Also, as Magistrate Judge Stewart noted, SHU videotapes on May 13, 2010 and September 7, 2010 containing alleged comments by unidentified correctional officers informing the Plaintiff that Lane had his mail would be hearsay and would not be admissible to show that Lane interfered with Plaintiff's mail. Dkt. No. 92, p. 10 n.3. (As noted above, Lane has submitted a declaration, supported by records, showing that he was not even on duty on May 13, 2010 or September 7, 2010. Dkt. No. 57-10, pp. 2-4).

Plaintiff with any violation of prison rules; and no one asked Lane to preserve the photograph. Lane stated that he did not destroy any of the other items at issue in Plaintiff's motion. Dkt. No. 90-2, p. 3. Defendants Chuttey and McCarthy have submitted declarations stating that they did not destroy any of the items at issue in Plaintiff's motion. Dkt. Nos 90-3, 90-4. Both defendants stated that it was their usual practice to "pull" and preserve video/audio tapes when there is a request for a tape, and that they would have done so if they had received a request from Plaintiff. Dkt. No. 90-3, p. 3; Dkt No. 90-4, pp. 3-4. Defendant McCarthy stated that video/audio recordings from the SHU are only preserved for fourteen days "before they are automatically deleted/taped over." Dkt. No. 90-4, p. 3. The Defendants note that Plaintiff's actual grievance "makes no mention of any request to actually preserve video/audio tapes." Dkt. No. 90-4, p. 4; Dkt. No 90-3, p. 3.

Based on this record, the Court finds that Plaintiff has failed to establish spoliation: Plaintiff has failed to meet his burden of establishing that defendants had an obligation to preserve the evidence identified in his motion and that it was destroyed with a culpable state of mind. The Court accordingly rejects Plaintiff's objection founded on his motion for spoliation.[5]

WHEREFORE, for the foregoing reasons, it is hereby

ORDERED that Magistrate Judge Stewart's Report-Recommendation (Dkt. No. 92) is ADOPTED in all respects; and it is further

ORDERED that Defendants' motion for summary judgment (Dkt. No. 57) is GRANTED and that this action DISMISSED, and it is further

---

[5] Plaintiff's remaining objections are without merit. As Defendants note that there is no support for Plaintiff's argument that a different standard applies to photographs in incoming mail than letters or other non-legal items in incoming mail. Dkt. No. 94, p. 1.

**ORDERED** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York.

 **IT IS SO ORDERED**.

Dated: August 15, 2016

Brenda K. Sannes
U.S. District Judge

KeyCite Yellow Flag - Negative Treatment

Distinguished by Collins v. Artus,    N.D.N.Y.,    March 9, 2009

2001 WL 303713
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Frankie CANCEL and Melvin Owens, Plaintiffs,
v.
Glenn S. GOORD, Commissioner
of New York State Department of
Correctional Services, et al. Defendants.

No. 00 CIV 2042 LMM.
|
March 29, 2001.

*MEMORANDUM AND ORDER*

MCKENNA, J.

**\*1** Frankie Cancel and Melvin Owens (collectively
"Plaintiffs"), inmates at Fishkill Correctional Facility
("Fishkill"), bring this pro se civil rights action
pursuant to 42 U.S.C. § 1983 against Defendants
Glenn S. Goord, Commissioner of the New York
State Department of Correctional Services ("DOCS");
Anthony Annucci, Deputy Commissioner of DOCS;
Jennifer Jones, Staff Attorney at DOCS; William
Mazzuca, Fishkill Superintendent; Robert Ercole, Fishkill
Deputy Superintendent; Robert Erbert, Fishkill Deputy
Superintendent, Administration; Ada Perez, Fishkill
Deputy Superintendent, Programs; Stephan Lowry,
Fishkill Captain; Lewis Goidel, Fishkill Inmate Grievance
Program ("I.G.P.") Supervisor; Christine O'Dell, Fishkill
Senior Mail Clerk; Sandie Breen, Fishkill Mail Clerk;
and John/Jane Doe[s], unknown Members of the
Fishkill Mail Room Staff (collectively "Defendants")
for unconstitutionally implementing the inmate grievance
program and for deliberately tampering and interfering
with their regular and legal mail. The Plaintiffs seek
injunctive relief as well as compensatory and punitive
damages from each Defendant individually and in their
official capacities. The Defendants filed a motion to
dismiss for failure to state a claim upon which relief can
be granted pursuant to Fed.R.Civ.P. 12(b)(6). For the

reasons set forth below the Defendants' motion is granted
in part and denied in part. [1]

[1]    Plaintiffs independently move pursuant to
Fed.R.Civ.P. 37(d) for an order compelling
defendants to comply with Plaintiffs' interrogatories.
As Defendants do not oppose this motion, and
because the court has partially denied Defendants'
motion to dismiss, Plaintiffs' motion is granted.
Defendants are hereby required to respond to
Plaintiffs' interrogatories, except those regarding the
Inmate Grievance Program, within sixty days of the
date hereof.

Statement of Facts [2]

[2]    The facts set forth herein are adduced from a
liberal reading of Plaintiffs' complaint. See Graham v.
Lewinski, 848 F.2d 342, 344 (2d Cir.1998).

On Friday August 28, 1998 Plaintiff Cancel received a
piece of legal mail marked as such from the Criminal
Term Clerk's Office of the Supreme Court in the State
of New York which had been opened outside his
presence. (Am.Compl.¶ 22.) The letter had been opened
by Defendants O'Dell, Breen, and unknown members of
Fishkill mail room staff even though it was clearly marked
as privileged legal mail. (*Id.* ¶¶ 22–24.)

On August 31, 1998 Cancel filed a grievance with the
Fishkill I.G .P. Supervisor, Defendant Goidel, regarding
the August 28 legal mail incident. (*Id.* ¶¶ 25–26.) Goidel
failed to process Cancel's grievance. (*Id.*) Subsequently, on
October 5, 1998 Cancel filed a second grievance, this time
against Goidel for refusing to process Cancel's original
grievance. (*Id.* ¶¶ 27–28.) This second grievance was not
processed. (*Id.*) On October 19, 1998 Cancel wrote a
letter to the I.G.P. Director informing him of Goidel's
refusal to process the two grievances. (*Id.*) Subsequently,
on November 2, 1998 both grievances were processed
(*Id.* ¶ 29) and on November 19, 1998 Cancel received a
grievance decision by Defendant O'Dell who wrote that
"such mistakes should not occur in the future." (*Id.* ¶ 36.)
Despite this statement both Cancel's legal mail and regular
mail were continually interfered with. (*Id.* ¶ 37.)

On December 4, 1998 Cancel put together a complaint
pursuant to New York State Civil Service Law § 75
seeking a hearing, disciplinary action and the removal of
Goidel for his improper actions and unlawful manner of

running the I.G.P. [3] (*Id.* ¶ 33.) On December 9, 1998 the complaint was mailed to Defendants Goord and Goidel. (*Id.* ¶¶ 33–35.) The complaint was ignored by both of these Defendants. (*Id.*) On December 14, 1998 Cancel sent a letter with a copy of the complaint to Defendant Annucci who also did not respond. (*Id.* at 35.)

[3]    New York Civil Service Law § 75 provides a cause of action for civil service employees unlawfully removed. Although neither party addressed this claim in their motion papers, the Court notes that § 75 specifically delineates five categories of persons who may maintain a cause of action for removal. Because Cancel does not fall into one of these five categories he has no standing to bring suit under this provision.

**\*2** On June 28, 1999 Cancel filed another grievance stating that both his regular and legal mail were being withheld. (*Id.* ¶ 38.) Subsequent to the filing of this grievance, but on the same day, Cancel received sixteen pieces of regular mail that had been withheld for several weeks by Defendants Mazzuca, O'Dell, Breen and unknown members of the Fishkill mail room staff. (*Id.*) Cancel filed a grievance about this interference with his regular mail recommending there be an investigation; however, his recommendation was denied. (*Id.* ¶ 39.)

On December 21, 1999 Cancel received another piece of legal mail which had not been processed or handled as legal mail because it was opened outside his presence. (*Id.* ¶ 40.) Cancel filed a complaint regarding this incident and attached photocopies of the legal mail that had been opened outside his presence. (*Id.* ¶ 41.)

On April 17, 2000 Cancel notarized two documents for a personal Family Court matter concerning his son, placed the legal documents in an envelope, sealed it, placed stamps on it and placed it in the outgoing mail addressed to "the other party in the matter." (*Id.* ¶ 49.) The envelope was intercepted, opened and photocopied by Mazzuca, O'Dell, Breen and unknown members of the Fishkill mail room staff and the photocopies were placed in Cancel's file. (*Id.* ¶¶ 49–51.) On July 12, 2000 Cancel met with a member of the Parole board who had Cancel's file which contained a memo from Mazzuca with the Family Court documents attached. (*Id.* ¶ 51.) Defendants continue to withhold Cancel's legal and regular mail. (*Id.*)

On November 5, 1999 Plaintiff Owens picked up a piece of legal mail that had been opened and photocopied outside his presence and had been withheld for about a week. (*Id.* ¶ 45.) As a result, Owens was unable to "research and file a timely Criminal motion for which he received an adverse decision." (*Id.*) The Defendants responsible for withholding this piece of legal mail were Mazzuca, Ercole, Erbert, Perez, O'Dell, Breen and unknown members of the Fishkill mail room staff. (*Id.*) Owens filed a grievance for the opening and photocopying of his legal mail denying him access to the courts, but it was denied. (*Id.* ¶ 47.)

Legal Standard

On a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept as true all well pleaded factual allegations set forth in the complaint and must draw all positive inferences in favor of the pleader. *Hudson v. Greiner,* No. 99 Civ. 12339, 2000 U.S. Dist. LEXIS 17913, at *4 (S.D.N.Y. Dec. 12, 2000). A case should only be dismissed when "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)). A plaintiff must do more than plead mere "conclusory allegations or legal conclusions masquerading as factual conclusions" to survive a motion to dismiss. *Gebhardt v. Allspect, Inc.,* 96 F.Supp.2d 331, 333 (S.D.N.Y.2000).

**\*3** Furthermore, since the Plaintiffs are proceeding pro se their submissions should be judged on a more lenient standard than that accorded to formal pleadings drafted by lawyers. *McNeil v. United States,* 508 U.S. 106, 113 (1993). The court must make some reasonable allowances so that a pro se plaintiff does not forfeit his rights by virtue of a lack of legal training. *Hudson,* 2000 U.S. Dist. LEXIS 17913, at *3. However, proceeding pro se does not altogether relieve a plaintiff from the usual pleading requirements. *Id.* at *4.

Plaintiffs' Civil Rights Claims

A plaintiff has a civil cause of action under § 1983 against:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes

to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

42 U.S.C. § 1983.

Plaintiffs bring this action under § 1983 alleging that Defendants violated their rights under the First, Fourth, Sixth and Fourteenth Amendments by unconstitutionally implementing the inmate grievance programs and by deliberately tampering and interfering with their regular and legal mail thereby denying them access to the courts and impinging on their rights to free speech.

### Discussion

#### 1. Denial of Access to Grievances and the Unlawful Operation of the Inmate Grievance Program

The amended complaint alleges that Defendant Goidel failed to process Cancel's grievance complaints and that the improper and unlawful running of the I.G.P. violated Cancel's First Amendment right to petition the government for redress and right of access to the courts. (Am.Compl.¶ 52.) Cancel also claims that Defendants Goord, Annucci, Mazzuca, Ercole, Perez, Erbert and Lowry failed to take action to "curb the unlawful practices of Defendant Goidel" even though they were aware that his unlawful conduct proximately caused the above constitutional violation. (*Id.* ¶ 53.)

While there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress, *e.g* ., *Bill Johnson's Rest., Inc. v. NLRB,* 461 U.S. 731, 741 (1983) (finding that "the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances"), inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983. *Justice v. Coughlin, III,* No. 94–CV–1287, 1996 U.S. Dist. LEXIS 15341, at *11 (N.D.N.Y. July 1, 1996). When an inmate sets forth a constitutional claim in a grievance to prison officials and the grievance is ignored, the inmate has the

right to directly petition the government for redress of that claim. *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991). Therefore, the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983. *Id.*

**\*4** Thus, Cancel's claim that the Defendants violated his First Amendment right of access to the courts and right to petition the government for redress by failing to process his grievances lacks merit and is dismissed with prejudice.

Cancel also claims that Goidel's failure to process his grievances and his unlawful and unfair running of the inmate grievance program violates New York State Correction Law § 139 which sets forth prison grievance procedures. (Am.Compl.¶ 52.) First, the failure to process a grievance in a timely manner only entitles an inmate to review at the next appeal level in the grievance process. *See Cliff v. Goodman,* 710 N.Y.S.2d 718 (App.Div.2000) (citing 7 NYCRR § 701.8 (2001)). Second, under New York law a claim generally challenging the constitutionality of the inmate grievance program does not constitute an actual controversy reviewable in an Article 78 proceeding or otherwise. *Matter of Hall v. State of N.Y. Dept. of Corr.,* 453 N.Y.S.2d 58 (App.Div.1992). When Cancel's grievances were ignored by Goidel, Cancel sought review at the next level and his grievances were subsequently processed. Further, Cancel's general dissatisfaction with the inmate grievance program does not constitute an actual controversy reviewable by the Court. *Id.* Therefore, Cancel's claim that Goidel's actions violated New York State Corrections Law § 139 is dismissed with prejudice.

#### 2. Denial of Access to the Courts as a Result of Legal Mail Tampering

Prisoners have a First Amendment right of access to the courts, and where there is a deliberate and malicious interference with that right they may seek redress from the court. *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.1986). To state a valid § 1983 claim for denial of access to the courts due to interference with an inmate's legal mail, an inmate must allege that a defendant's deliberate and malicious interference actually impeded his access to the court or prejudiced an existing action. *Lewis v. Casey,* 518 U.S. 343, 349 (1996). Therefore, in order to survive a motion to dismiss a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual

injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim. *Id.* at 351. In other words "the plaintiff must show that a 'non-frivolous legal claim had been frustrated or was being impeded' due to the actions of prison officials." *Warburton v. Underwood,* 2 F. Supp .2d 306, 312 (W.D.N.Y.1998) (quoting *Lewis,* 518 U.S. at 353); *see also Monsky v. Moraghan,* 127 F.3d 243, 247 (2d Cir.1997).

Plaintiff Cancel does not state a cognizable § 1983 claim for denial of access to the courts because he has not alleged any actual injury resulting from Defendants' actions. Cancel alleges three instances where his legal mail was handled inappropriately. [4] Cancel must show that because Defendants opened his outgoing and incoming legal mail he was prejudiced in a legal action he sought to pursue. Because Cancel has not alleged such an injury, his claim under the First Amendment for denial of access to the courts is dismissed with leave to amend the complaint with allegations, if true, that (1) Defendants' interference with Cancel's legal mail injured him by prejudicing him in a legal action; and (2) that the outgoing envelope containing the Family Court documents mailed on April 17, 2000 was clearly identifiable as legal mail. [5]

[4]    Liberally construing Plaintiffs' complaint, the Court assumes that the Family Court documents Cancel mailed on April 17, 2000 were in an envelope addressed to a person or entity that would clearly identify the letter as legal mail or that the envelope was marked as "legal mail." Plaintiff only alleges that he sent these Family Court documents to "the other party in the matter" (Am.Compl.¶ 49) and the Court assumes for the purpose of this motion only that the envelope in question was clearly identified as legal mail.

[5]    "[T]he court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)).

**\*5** As to Plaintiff Owens' claim with respect to legal mail, the amended complaint alleges that because Owens' mail was opened and withheld for about a week he was "unable to research and file a timely response to a Criminal motion for which he received an adverse decision." (Am.Compl.¶ 45.) A delay in being able to work on one's legal action or communicate with the courts does not rise to the level

of a constitutional violation. *Jermosen v. Coughlin,* 877 F.Supp. 864, 871 (S.D.N.Y.1995) (citing *Jones v. Smith,* 784 F.2d 149, 151–52 (2d Cir.1986)). However, if Owens' adverse judgment to his otherwise meritorious Criminal motion was the result of the named Defendants' opening and withholding of his legal mail then he has stated a claim under § 1983 for denial of access to the courts. For purposes of this motion, the Court accepts all allegations as true and draws all positive inferences in favor of Plaintiff. *See Hudson,* 2000 U.S. Dist LEXIS 17913, at
[*] 3. Therefore, Defendants' motion is denied as to Plaintiff Owens' claim under the First Amendment for denial of access to the courts.

### 3. Violation of the First Amendment Right to Free Speech for Interference with Cancel's Mail

Cancel alleges that Defendants' continuous actions of opening and reading his incoming legal mail, the temporary withholding of his regular mail and the opening and photocopying of his outgoing legal mail impinges on his constitutional right to free speech. (Am.Compl.¶¶ 54, 60, 63.) Inmates unquestionably have a First Amendment right of free speech to send and receive mail, *Wolfish v. Levi,* 573 F.2d 118, 130 (2d Cir.1978), *rev'd in part on other grounds sub nom., Bell v. Wolfish,* 441 U.S. 520 (1979), and a prison official's interference with an inmate's mail may violate his First Amendment right to free speech, which includes the "right to be free from unjustified governmental interference with communication." *Brewer v. Wilkinson,* 3 F.3d 816, 820 (5th Cir.1993).

The boundary between an inmate's First Amendment right to free speech and the ability of prison officials to open or otherwise interfere with an inmate's mail is not precise. However, when analyzing such claims courts have consistently made distinctions between outgoing and incoming mail and legal and non-legal mail based on the various rights and interests at stake. *See Taylor v. Sterrett,* 532 F.2d 462, 475 (5th Cir.1976) (holding that the governmental interest in monitoring incoming mail is more substantial than its interest regarding outgoing mail); *see also Lewis,* 518 U.S. at 353 (holding that prison regulations or practices that affect a prisoner's legal mail are of particular concern because of the potential for interference with a prisoner's right of access to the courts).

With respect to the first distinction, the Supreme Court has recognized that "the implications of outgoing

correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials." *Thornburgh v. Abbott,* 490 U.S. 401, 413 (1989). Therefore, the penological interests for interference with outgoing mail must be more than just the general security interest which justifies most interference with incoming mail. *Davidson v. Scully,* 694 F.2d 50, 53 (2d Cir.1982).

**\*6** As to the second distinction, many courts have held that a prisoner's legal mail is entitled to a higher degree of protection than his regular mail. *See Morgan v. Montanye,* 516 F.2d 1367, 1368 (2d Cir.1975) (holding that although prison officials can inspect an inmate's general correspondence, different procedures apply to an inmate's legal mail which should be treated as confidential material); *see also Taylor,* 532 F.2d at 475. Therefore, prison polices or practices which interfere with legal mail on a regular basis whether incoming or outgoing must be supported by a legitimate penological interest other than mere general security concerns which permit interference with regular mail. *Washington,* 782 F.2d at 1139 (citing New York State Department of Corrections Directive 4421).

A. Incoming Mail

1. Withholding of Incoming Non–Legal Mail
Cancel alleges that Defendants withheld his incoming non-legal mail and relies on a single instance when he received sixteen pieces of regular mail on the same day he filed a grievance about the opening of his legal mail. (Am.Compl.¶ 38.) These sixteen pieces of regular mail had been withheld for several weeks. (*Id.*) Prison regulations or practices affecting a prisoner's receipt of non-legal mail must be "reasonably related to legitimate penological interests," *Abbott,* 490 U.S. at 409 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)), and "prison security is a sufficiently important governmental interest to justify limitations on a prisoner's [F]irst [A]mendment rights." *Gaines v.. Lane,* 790 F.2d 1299, 1304 (7th Cir.1986). However, this general security interest will not justify a regular pattern and practice of such interference absent other prison concerns with regards to a particular inmate. *Rowe v. Shake,* 196 F.3d 778, 782 (7th Cir.1999).

This Court agrees with the reasoning of the Seventh Circuit in *Rowe* that in order for an inmate to state a claim for interference with incoming non-legal mail he

must show a pattern and practice of interference that is not justified by any legitimate penological concern. *Id.* Because Cancel only alleges that prison officials withheld his regular mail on one occasion, rather than showing a pattern and practice of such behavior, his First Amendment free speech claim for the withholding of his regular incoming mail is dismissed with leave to amend the complaint to include specific allegations, if true, establishing such a pattern and practice.

2. Opening and Withholding of Incoming Legal Mail
Cancel alleges two occasions upon which the Defendants opened his incoming legal mail outside his presence. (Am.Compl.¶¶ 22, 40.) Although legal mail is "privileged" and is afforded a higher degree of protection, there still must be a showing that prison officials regularly and unjustifiably interfered with the incoming legal mail rather than merely showing an isolated incident. *Washington v. James,* 782 F.2d 1134, 1139 (2d Cir.1986).

**\*7** In *Washington,* the Second Circuit held that more than one incident of interference with legal mail could give rise to a constitutional claim if it indicated ongoing activity. 782 F.2d at 1139; *see also Bieregu v. Berman,* 59 F.3d 1445, 1452 (3d Cir.1995) (finding that an allegation that prison officials had opened an inmate's incoming legal mail on fifteen occasions was sufficient to show a pattern and practice of deliberate interference). However, in the present case Plaintiff proffers only two instances of opening incoming legal mail with no indication that such practices are ongoing. Without alleging additional facts to establish a pattern and practice that rises to the level of constitutionally impermissible censorship, Plaintiff's complaint is deficient. Therefore, Cancel's claim that Defendants violated his First Amendment right to free speech for interference with his incoming legal mail is dismissed with leave to amend the complaint to include specific allegations, if true, that establish the requisite pattern and practice of interference. [6]

[6]    Plaintiffs' also allege that in October 1999 Defendant Lowery ordered mail sent to any inmate by the Legal Aid Society regarding contemplated litigation against the New York State Parole Board to be confiscated if seen. (Am.Compl.¶ 42.) In addition, Defendant Ercole also instructed the Fishkill mail room staff to confiscate all mail envelopes larger than regular size, to transfer the contents to a facility envelope and then forward it to the inmate to whom it is addressed.

(*Id.* ¶ 43.) Plaintiffs make these allegations in their complaint without stating that they personally were to receive this letter from the Legal Aid Society or that Ercole's policy affected their mail in any way. Because there is no allegation that Plaintiffs' mail was affected by either policy they have no standing to bring a suit for these allegations and they are not addressed by the Court. Plaintiffs' are given leave to amend the complaint to allege, if that be the case, that these polices affected their personal legal mail. If such allegations are made they will be considered in establishing a pattern and practice of interference with legal mail.

B. Outgoing Legal Mail

Cancel's claim that prison officials interfered with his outgoing legal mail poses a different question. As previously stated, the Supreme Court has explicitly recognized that there are "differing penological concerns with respect to outgoing and incoming mail." *Brewer v. Wilkinson,* 3 F.3d 816, 825 (5th Cir.1993) (citing *Thornburgh v. Abbott,* 490 U.S. 401, 413 (1989)). The Second Circuit has held that prison officials can only open an inmate's outgoing legal mail if there is a "rational justification" for doing so. *Davidson,* 694 F.2d at 54 (citing *Wolfish,* 573 F.2d at 130.). The Fifth Circuit has applied the same standard to an instance where an inmate's outgoing legal mail was opened and censored without a "legitimate penological interest" and found the practice to violate the inmate's First Amendment right to free speech. *Brewer,* 3 F.3d at 825.

In the present case, Defendants have failed to state any rational justification for opening and photocopying Cancel's outgoing legal mail. Because interference with outgoing legal mail cannot be based on a general prison security interest, Defendants must provide additional justification for their actions. Therefore, because Defendants have interfered with Cancel's outgoing legal mail without providing any legitimate penological interest, Cancel has stated a valid claim under the First Amendment right to free speech. [7] Defendants' motion to dismiss Cancel's claim for violation of his First Amendment right to free speech is denied with respect to his outgoing legal mail.

[7]     As originally stated in footnote 4, the Court again presumes that the Family Court documents were placed in an envelope marked or addressed in such a way that it could be identified as legal mail. If in fact

this document was not privileged legal mail, this First Amendment free speech claim may require a different analysis.

4. Money Damages Barred by 42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act

Defendants argue that the money damages Plaintiffs seek are barred by 42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act because the complaint does not allege any physical injury. (Defs.' Mem. at 8–9.) Section 1997e(e) states, "[n]o federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in the custody without a prior showing of physical injury." *Id.*

**\*8** The plain language of the statute does not prohibit a plaintiff's First Amendment claim. Section 1997e(e) specifically prohibits federal civil action[s] for mental or emotional injury without a showing of physical injury. In this case Plaintiffs do not allege any claim of mental or emotional distress for which they are seeking redress. Furthermore, the few courts that have addressed this issue have held that:

> the deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred. Therefore, § 1997e(e) does not apply to First Amendment claims regardless of the form of relief sought.

*Reynolds v. Goord,* No. 98 Civ. 6722, 2000 U.S. Dist LEXIS 2140, at *23 (S.D.N.Y. Mar. 1, 2000) (quoting *Canell v. Lightner,* 143 F.3d 1210, 1213 (9th Cir.1998)). Therefore, § 1997e(e) is not applicable to the present case and does not bar Plaintiffs from seeking recovery for First Amendment claims of denial of access to the courts and violation of free speech.

5. Lack of Personal Involvement of Defendants

The personal involvement of defendants in an alleged constitutional violation is a prerequisite under § 1983. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). A plaintiff must allege that each defendant was directly and personally responsible for the purported conduct

and establish fault and causation on the part of each defendant. *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883 (2d Cir.1987).

Defendants move to dismiss all claims against Defendants Goord, Annucci, Jones, Mazzuca, Ercole, Perez and Erbert for lack of personal involvement. Plaintiffs' amended complaint as to Owens' legal mail claim alleges that Defendants Mazzuca, Ercole, Perez, and Erbert were personally involved in the opening and withholding of his legal mail. Additionally, Mazzuca is implicated in Cancel's claim for violating his First Amendment right to free speech. Accepting these allegations as true, the Defendants' motion to dismiss for lack of personal involvement against Mazzuca, Ercole, Perez, and Erbert is denied.

As to Defendants Goord, Annucci and Jones, in a § 1983 action supervisors cannot be held liable under the theory of respondeat superior for the acts of their subordinates. *Id.* at [*]7. A supervisor can only be found to be personally involved if there is evidence that there was: (1) direct participation in the alleged constitutional violation, (2) failure to remedy a wrong after learning of it, (3) creation or maintenance of a policy under which unconstitutional violations occurred, (4) gross negligence in managing subordinates who committed the unconstitutional acts, or (5) deliberate indifference by failing to act on information indicating that constitutional violations were occurring. *Id.; see also Colon,* 58 F.3d at 873. Allegations that a supervisor ignored an inmate's grievance letter of protest and request for an investigation is insufficient to find that a supervisor is personally involved in the alleged constitutional violations. *Kinch v. Artuz,* No. 97 Civ. 2419, 1997 U.S. Dist. LEXIS 13998, at [*]8 (S.D.N.Y. Sept. 15, 1997).

**\*9** Plaintiffs' amended complaint contains no allegations relating to the personal involvement of Defendants Goord, Annucci and Jones either through direct participation, maintenance of a policy or deliberate disregard for Plaintiffs' rights. Plaintiffs' sole claim against these three Defendants is that they were sent grievances and complaints by Cancel which were ignored. Plaintiffs' claims as to these three Defendants are dismissed with prejudice.

Conclusion

For the above stated reasons the Defendants' motion is granted in part and denied in part as follows:

(1) Cancel's claims against Goidel under the First Amendment right to petition the government for redress and right of access to the courts for failure to process grievances and for the unlawful running of the I.G.P. are dismissed with prejudice.

(2) Cancel's claims against Defendants Goord, Annucci, Mazzuza, Ercole, Perez, Erbert and Lowry for failure to curb the unlawful practices of Goidel in his unlawful running of the I.G.P. are dismissed with prejudice.

(3) Cancel's claim that Goidel's actions violated New York State Corrections Law § 139 is dismissed with prejudice.

(4) Cancel's claim under the First Amendment for denial of access to the courts is dismissed with leave to amend the complaint with allegations that (a) Defendants' interference with Cancel's legal mail injured him by prejudicing him in a legal action; and (b) that the outgoing envelope containing the Family Court documents mailed on April 17, 2000 was clearly identifiable as legal mail.

(5) Defendants' motion is denied as to Owens' claim under the First Amendment for denial of access to the courts against Mazzuca, Ercole, Perez, Erbert, O'Dell, Breen and unknown members of the Fishkill mail room staff.

(6) Cancel's claim under the First Amendment right to free speech for the withholding of his regular incoming mail is dismissed with leave to amend the complaint with specific allegations that establish a pattern and practice of interference.

(7) Cancel's claim that Defendants violated his First Amendment right to free speech for interference with his incoming legal mail is dismissed with leave to amend the complaint with specific allegations that establish a pattern and practice of interference with Cancel's incoming legal mail.

(8) Defendants' motion is denied as to Cancel's claim under the First Amendment for a violation of free speech for interference with his outgoing legal mail against Mazzuca, O'Dell, Breen and unknown members of the Fishkill mail room staff.

(9) Defendants' motion to dismiss the claims against Mazzuca, Ercole, Perez, and Erbert for lack of personal involvement is denied.

(10) Defendants' motion to dismiss the claims against Goord, Annucci and Jones for lack of personal involvement is granted with prejudice.

(11) The Court also considered Plaintiffs' claim that Defendants' actions violated Article 14 and 17 of the International Covenant on Civil and Political Rights ("ICCPR"). (Am.Compl.¶ 54, 55, 58, 60.) However, courts have uniformly held that the ICCPR is not self-executing and does not give rise to a private right of action. *See Beazley v. Johnson,* No. 99–41383, 2001 WL 118393, at *18– *19 (5th Cir.2001) (citing additional cases). Therefore, the Court sua sponte dismisses Plaintiffs' claims under the ICCPR.

**All Citations**

Not Reported in F.Supp.2d, 2001 WL 303713

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 2095024
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Dwayne SINGLETON, Plaintiff,
v.
Correction Officer WILLIAMS, Defendant.

No. 12 Civ. 02021(LGS).
|
Signed May 20, 2014.

*OPINION AND ORDER*

LORNA G. SCHOFIELD, District Judge.

**\*1** Dwayne Singleton, pro se, brings this action pursuant
to 42 U.S.C. § 1983 against Defendant Correction
Officer Kimberly Williams, alleging interference with his
mail during his incarceration at the George R. Vierno
Center ("GRVC") on Rikers Island, in violation of the
First and Fourteenth Amendments. Defendant moves
for summary judgment dismissing the Complaint in its
entirety ("Motion"). Because Plaintiff has failed to adduce
sufficient evidence to permit a reasonable juror to return
a verdict in his favor, Defendant's Motion is granted.

*BACKGROUND*

**I. Factual Background**
The following facts are taken from Plaintiff's deposition,
Plaintiff's Complaint, Defendant's Statement pursuant to
Local Rule 56.1 ("56.1 Statement") and Defendant's other
filings in support of her Motion.

This case involves Plaintiff's allegations that his mail was
stolen or withheld while he was incarcerated at GRVC,
from December 2009 to May 2010, and from September
2011 to March 2012. While at GRVC, Plaintiff drafted
letters "everyday," usually "ten, fifteen letters in one
shot." Plaintiff corresponded with his mother, his cousins,
an ex-girlfriend, his lawyers, a friend named "Stacy,"
whose last name and contact information is unknown
to Plaintiff, and several other women whose names he
does not recall. Plaintiff also sent letters to outpatient

programs, drug programs, magazines, and "businesses,"
including a record company and a film company.

Plaintiff received "a lot of mail" while incarcerated at
GRVC, including from his mother, the ex-girlfriend, a
social worker and other individuals. Plaintiff also received
money from his mother and his cousins on numerous
occasions. In addition to personal mail, Plaintiff received
legal mail, which was recorded in a log. Plaintiff signed
for legal mail on twelve occasions between December 2011
and March 2012.

Plaintiff suspected he was not receiving all of his mail
because he "wrote to certain people and he didn't get [any]
response back [from] ... a few girls ... [and] businesses." In
addition, Plaintiff's friend "Stacy" told him that she had
not received any of the four or five letters Plaintiff had sent
her, and that she had sent him letters, which Plaintiff did
not receive. Plaintiff testified that no one except Stacy told
him they had sent mail that he had not received.

While Plaintiff was an inmate at GRVC, Defendant was
the primary mail officer on duty from Monday to Friday,
and frequently distributed Plaintiff's mail, usually after
lunch. When Defendant was unavailable, other correction
officers filled in and distributed mail to the inmates.

Plaintiff and Defendant offer conflicting evidence
concerning Defendant's alleged interference with
Plaintiff's mail. Plaintiff asserts that he first suspected that
Defendant was stealing his mail because she spoke to him
disrespectfully. Plaintiff testified that "[t]hings started to
get out of hand when [Plaintiff] suspected that [Defendant]
was ... messing with [his] mail." Plaintiff observed that
Defendant was friendly with some inmates and delivered
their mail, but heard that she was "playing with" the mail
of inmates she did not like.

**\*2** According to Plaintiff, when he confronted her, she
"would look at [him] with the mail in her hand, and
keep walking." On March 5, 2012, Defendant made two
statements to Plaintiff, both of which he interpreted as
admissions that she was withholding his mail. Defendant
made the statements when Plaintiff was questioning or
accusing Defendant about his mail, apparently not for
the first time, and she responded, "[y]ou keep asking me
stupid questions, you aint' getting your f*ckin' mail."
Defendant also said "you crazy, take ya' medication, cause
you got that right, you won't be getting no f*ckin' mail

from me." According to Plaintiff, he could not "prove" that Defendant was interfering with his mail until she made these statements. Plaintiff stated that during this exchange he was being "volatile" and "probably having bipolar disorder." After that incident, Plaintiff did not recall receiving mail from Defendant again, although he did receive mail from other correction officers. Plaintiff was transferred out of GRVC approximately one week after the confrontation with Defendant.

According to Defendant, near the end of Plaintiff's incarceration at GRVC, he accused her of stealing his mail, spit on the glass separating them, and threatened to kill her, at which point Defendant gave Plaintiff's mail to a different correction officer for delivery. Defendant states that after this incident, Plaintiff would "yell and threaten [her]" and on multiple occasions, threatened to kill her and her family. Defendant denies withholding, tampering, or otherwise interfering with Plaintiff's mail.

## II. Procedural History

On December 19, 2013, Defendant filed her Motion, 56.1 Statement, and supporting papers, including excerpts from Plaintiff's deposition. On January 22, 2014, Plaintiff filed his opposition to the Motion ("Opposition"). Plaintiff's Opposition consisted of six declaratory sentences reiterating the assertions in his Complaint. Plaintiff filed no supporting affidavits or other evidence, and no opposition to Defendant's 56.1 Statement. On January 29, 2014, Defendant filed her reply to Plaintiff's Opposition. On March 17, 2014, Plaintiff filed a "response" to Defendant's reply, asserting that he "did overhear [Defendant] tell [him] with her own words that she was stealing [his] mail," and that "there are no witnesses because it was just [Defendant] in front of [Plaintiff's] cell."

## STANDARD

The standard for summary judgment is well established. Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed.R.Civ.P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477

U.S. 317, 322 (1986); Koch v. Town of Brattleboro, 287 F.3d 162, 165 (2d Cir.2002). The court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); In re "Agent Orange" Prod. Liab. Litig., 517 F.3d 76, 87 (2d Cir.2008).

*3 If the non-moving party has the burden of proof on a specific issue, the moving party may satisfy its own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. See, e.g., Celotex, 477 U.S. at 322–23; PepsiCo, Inc. v. Coca–Cola Co., 315 F.3d 101, 105 (2d Cir.2002). In other words, summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

"Although pro se plaintiffs are entitled to special latitude, when defending against summary judgment motions, absent a showing of concrete evidence from which a reasonable juror could return a verdict in [the non-moving party's] favor, summary judgment must be granted to the moving party." Jermosen v. Coughlin, 877 F.Supp. 864, 867 (S.D.N.Y.1999) (alteration in original) (citations omitted) (internal quotation marks omitted). "Evidence which is merely colorable, conclusory, speculative or not significantly probative is insufficient to withstand a summary judgment motion." Id. (internal quotation marks omitted).

Where the non-moving party fails to respond to a Rule 56.1 statement submitted by the moving party, the facts in the moving party's Rule 56.1 statement may be deemed admitted as a matter of law. S.D.N.Y.R. 56.1–56.2. In the Second Circuit, however, "[c]ourts ... typically forgive a pro se plaintiff's failure to file a Local Rule 56.1 Statement, and generally conduct their own independent review of the record." Lloyd v. Holder, No. 11 Civ. 3154, 2013 WL 6667531, at *5 (S.D.N.Y. Dec. 17, 2013).

## DISCUSSION

The Complaint alleges a violation of "federal laws," including the First Amendment to the Constitution and "Section 1309 of the U.S. Postal Code"[1] on account of Defendant "stealing" "personal mail ... business mail

and more," and asserts that jurisdiction is proper under [42 U.S.C. § 1983](#). Construing the Complaint broadly, Plaintiff has stated claims pursuant to [42 U.S.C. § 1983](#) for deprivation of Plaintiff's First Amendment rights on account of interference with non-legal mail, and deprivation of Plaintiff's First and Fourteenth Amendment rights on account of interference with legal mail. Because Plaintiff has failed to adduce evidence sufficient for a reasonable juror to find that the alleged interference with his mail amounted to a constitutional violation, summary judgment is granted on all claims.

1    Because no such legal provision exists, this claim will not be addressed.

## I. Non–Legal Mail

An inmate has a First Amendment right to "the free flow of incoming and outgoing mail." *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003); *Heimerle v. Attorney General,* 753 F.2d 10, 13 (2d Cir.1985). Restricting prisoners' right to mail is permissible only where it "further[s] one or more of the substantial governmental interests of security, order, and rehabilitation ... [and is] no greater than is necessary or essential to the protection of the particular governmental interest involved." *Ahlers v. Rabinowitz,* 684 F.3d 53, 64 (2d Cir.2012) (quoting *Davis,* 320 F.3d at 351). To establish a claim for interference with regular, non-legal mail in violation of the First Amendment, an inmate "must show a pattern and practice of interference that is not justified by any legitimate penological concern." *Cancel v. Goord,* No. 00 Civ.2042, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001) (dismissing First Amendment claim where inmate identified only a "single instance" of interference with his regular mail). The Second Circuit has directed that "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis,* 320 F.3d at 351.

**\*4** Here, the evidence in the record is insufficient for a reasonable juror to find that Plaintiff has established interference with his incoming non-legal mail rising to the level of a First Amendment violation. Even construing the evidence in Plaintiff's favor, Plaintiff has alleged only one specific incident involving interference with his mail— that he attempted to exchange mail with his friend Stacy, whose last name and contact information he does not know, and that neither Plaintiff nor Stacy received each other's mail. Plaintiff's assertion that Defendant interfered

with his mail is otherwise based upon three facts: (1) that he wrote numerous letters to individuals, businesses and organizations, and did not receive responses to all of his letters; (2) that approximately one week before Defendant was transferred from GRVC, Defendant responded to Plaintiff's allegations that she was stealing his mail by stating "you crazy, take ya' medication, cause you got that right, you won't be getting no f*ckin' mail from me" and "[y]ou keep asking me stupid questions, you' aint' getting your f*ckin' mail"; and (3) that he heard from "some other guys" that Defendant was "playing with the mail" of the inmates she did not like. These allegations are insufficient to "establish a pattern and practice of interference [with Plaintiff's mail]," particularly where Plaintiff also testified that he otherwise received mail from "a lot of people" and that no other individuals told him that they had sent mail that he had not in fact received. Accordingly, Defendant's Motion as to Plaintiff's First Amendment claim for interference with non-legal mail is granted.

## II. Legal Mail

Interference with legal mail may constitute a violation of the right to free speech under the First Amendment and the right of access to the courts under the First and Fourteenth Amendments. *Davis,* 320 F.3d at 351; *Monsky v. Moraghan,* 127 F.3d 243, 246–47 (2d Cir.1997) (citing *Lewis v. Casey,* 518 U.S. 343 (1996)). As with interference with non-legal mail, interference with legal mail is permissible only where it "further[s] one or more of the substantial governmental interests of security, order, and rehabilitation ... [and is] no greater than is necessary or essential to the protection of the particular governmental interest involved." *Ahlers,* 684 F.3d at 64 (internal quotation marks omitted). Legal mail, however, is "afforded greater protection ... than ... non-legal mail." *Davis,* 320 F.3d at 351; *accord Cancel,* 2001 WL 303713, at *6. To establish a violation of the right to free speech, an inmate must still demonstrate that prison officials "regularly and unjustifiably interfered with the ... legal mail." *Cancel,* 2001 WL 303713, at *6 (citing *Washington v. James,* 782 F.2d 1134, 1139 (2d Cir.1986)). To establish a claim of denial of access to the courts, a plaintiff must show: (1) that the defendant acted deliberately and maliciously; and (2) that the plaintiff suffered actual injury in pursuing a legal claim. *Davis,* 320 F.3d at 351 (internal quotation marks omitted).

**\*5** The record does not contain sufficient evidence to permit a reasonable juror to find that Plaintiff

has established that Defendant's conduct in respect of Plaintiff's legal mail amounted to a constitutional violation. First, Plaintiff has neither alleged nor produced evidence that his receipt or delivery of legal mail was impeded. Plaintiff testified that he "sent a lot of different pieces of mail" to his lawyers, that "legal mail is always recorded when you receive it," and that he "received mail from the lawyer." [2] The record indicates at least twelve occasions on which Plaintiff signed for legal mail for the period from December 2011 through March 2012. Second, there is no evidence that Plaintiff suffered any injury in pursuing his legal claims as a result of any interference with his legal mail. For example, when asked during his deposition whether his criminal case was affected in any way by the incident involving "[the] messing with [his] mail," Plaintiff responded "[o]nly in a mental way." Defendant's Motion for summary judgment on Plaintiff's claims in respect of his legal mail is accordingly granted.

[2]     Similarly, because Plaintiff has not alleged any interference with his access to counsel, nor did any of the evidence indicate as much, a Sixth Amendment claim would also fail on these facts.

### *CONCLUSION*

For the reasons discussed above, Defendant's Motion for summary judgment dismissing all of Plaintiff's claims is hereby GRANTED.

The Clerk of Court is directed to close the motion at docket number 38, to close this case, and to mail a copy of this Opinion and Order to the pro se Plaintiff.

### All Citations

Not Reported in F.Supp.3d, 2014 WL 2095024

---

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.